RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE  9/18/07
       6b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| TIMOTHY MAGNON | CIVIL ACTION NO. 06-0587 |
| VERSUS | JUDGE MELANÇON |
| FOREST OIL CORP ET AL | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Before the Court is Forest Oil Corporation's ("Forest Oil") Motion for Summary Judgment and Memorandum in Support thereof [Rec. Doc. 19], plaintiff's Memorandum in Opposition to Forest Oil's motion [Rec. Doc. 22], and Forest Oil's Reply to plaintiff's Memorandum in Opposition [Rec. Doc. 29]. For the reasons that follow, Forest Oil's motion will be **GRANTED**.

### I. BACKGROUND

Timothy Magnon ("Magnon" or "plaintiff") was employed by Prosper Operators, Inc. ("Prosper"), a contractor engaged to provide support services and personnel to various Forest Oil platforms.[1] One of the locations serviced by Prosper was the Grand Isle 76 platform - a platform owned and operated by Forest Oil and located on the Outer Continental Shelf.[2] Since beginning his employment with Prosper in December of 2004, Magnon worked exclusively on Forest Oil rigs.[3] At the time of plaintiff's alleged

---

[1] *Plaintiff's Memorandum in Opposition to Motion for Summary Judgment* [Rec. Doc. 22], pg. 1; *Forest Oil's Memorandum in Support of Motion for Summary Judgment* [Rec. Doc. 19-2], pg. 1.

[2] *Plaintiff's Memorandum in Opposition to Motion for Summary Judgment* [Rec. Doc. 22], pg. 2; *Forest Oil's Memorandum in Support of Motion for Summary Judgment* [Rec. Doc. 19-2], pg. 2.

[3] *Deposition of Timothy Magnon*, pg. 36

accident, Magnon was assigned to work and was working on Grand Isle 76.[4]

On the morning of April 10, 2005, approximately half way through his second hitch on the Grand Isle 76 platform, Magnon attempted to bleed a line on the platform.[5] While draining the line, a valve nipple manufactured by Westbrook, L.L.C. allegedly ruptured and caused Magnon severe injuries.[6] Darryl Davis ("Davis"), a Forest Oil employee and Magnon's lead on this particular hitch, heard the accident occur and called for a helicopter to take Magnon ashore for medical treatment.[7]

Magnon filed suit contending that Forest Oil is liable for his injuries due to its own negligence and the negligence of its employees. Forest Oil filed the present motion seeking to have this Court declare that plaintiff was the borrowed employee of Forest Oil and that, as such, Forest Oil is immune from tort liability under the Longshore and Harbor Workers' Compensation Act (the "LHWCA"), 33 U.S.C. §§ 901, *et. seq.*.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air*

---

[4] *Plaintiff's Memorandum in Opposition to Motion for Summary Judgment* [Rec. Doc. 22], pg. 2; *Forest Oil's Memorandum in Support of Motion for Summary Judgment* [Rec. Doc. 19-2], pg. 2.

[5] *Deposition of Timothy Magnon*, at 39; *Plaintiff's Complaint* [Rec. Doc. 1], ¶3.

[6] *Id.*

[7] *Deposition of Darryl Davis*, pg. 30-31; *Deposition of Timothy Magnon*, pg. 48.

*Corp.*, 37 F.3d 1069 (5th Cir.1994)(*en banc*). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[8] *Id.* at 322-23. Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144. 159

---

[8] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

3

(1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c) *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. LAW & ANALYSIS

Generally, the question of borrowed employee status is a question of law for the court to determine. *Billizon v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993) *reh'g denied* 3 F.3d 441 (5th Cir. 1993). In some cases, however, factual disputes must be resolved before the district court can make a legal determination. *Id (citing Brown v. Union Oil Co. of California*, 984 F.2d 674, 679 (5th Cir. 1993) *and Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1245 n. 13 (5th Cir. 1988), *reh'g granted on other grounds*, 841 F.2d 572 (5th Cir. 1988)). Here, Forest Oil alleges that no genuine issue of material fact exists regarding Magnon's status as a borrowed employee and, therefore, summary

judgment is appropriate.[9] In support of this position, Forest Oil points to the United States Fifth Circuit Court of Appeal case of *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312 (5th Cir. 1969). There, the Court identified nine factors that must be considered in determining borrowed employee status in the context of the LHWCA. These factors are:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?

*Brown*, 984 F.2d at 676 (*citing Ruiz*, 413 F.2d 310).

While the Fifth Circuit has held that no single *Ruiz* factor is determinative, when the LHWCA is used as a defense to tort liability, the principal focus within the *Ruiz* test is: "(1) was the second employer itself responsible for the working conditions experienced by the employee, and the risks inherent therein, and (2) was the employment

---

[9] *Forest Oil's Memorandum in Support of Motion for Summary Judgment* [Rec. Doc. 19-2], pg. 1.

with the new employer of such duration that the employee could be reasonably presumed to have evaluated the risks of the work situation and acquiesced thereto[.]" *Gaudet v. Exxon Corp.*, 562 F.2d 351, 357 (5th Cir. 1977), *cert. denied* 436 U.S. 913 (1978); *See Also Billizon*, 993 F.2d at 106; *Brown*, 984 F.2d at 676; *Melancon*, 834 F.2d at 1245.[10] These factors are considered the most important when the borrowed employee doctrine is used as a defense to tort liability because they deal with the question of whether the circumstances of the employee's employment are such that the defendant "should be considered an employer and not a third party under the LHWCA." *Gaudet*, 562 F.2d at 357. With this focus mind, if, after considering each of the *Ruiz* factors, ". . . sufficient basic factual ingredients are undisputed, the court may grant summary judgment." *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 617 (5th Cir. 1986), *cert. denied* 479 U.S. 838 (1986).

### 1. Control

Magnon admits that he received his daily instructions from and was directed by Forest Oil employees on both hitches on the Grand Isle 76 platform.[11] In fact, it was Ernest Wiliford ("Wiliford"), another Forest Oil employee, who instructed Magnon to

---

[10] In other cases, the first factor, control, has been considered the central, though not solely determinative, issue of borrowed employee status. *Melancon*, 834 F.2d at 1245; *see also Hebron v. Union Oil Co. of California*, 634 F.2d 245 (5th Cir. 1981). In either event, the Court will examine each of the *Ruiz* factors in this case and make its determination based on the totality of the circumstances.

[11] *Plaintiff's Memorandum in Opposition to Motion for Summary Judgment* [Rec. Doc. 22], pg. 5; *Forest Oil's Memorandum in Support of Motion for Summary Judgment* [Rec. Doc. 19-2], pg. 5; *Deposition of Timothy Magnon*, pg. 24; *Deposition of Darryl Davis*, pg. 77.

bleed the line where the alleged accident occurred.[12] Throughout his tenure at Prosper, Magnon worked exclusively for Forest Oil and specifically referred to Forest Oil employees as his "boss" and his "lead."[13] Plaintiff admitted that ". . . he essentially learned all his on site job responsibilities while working on a finished production well during his hitch on the Eugene Island 53-C platform" – another Forest Oil platform.[14]

Despite these admissions, plaintiff maintains that a material issue of fact exists as to whether Forest Oil had control over him and the work he was performing. In no small part, plaintiff's argument is based on his own self-serving and unsubstantiated assertions contained in an affidavit that was submitted after depositions were taken and then only in response to Forest Oil's Motion for Summary Judgment. In that affidavit, plaintiff alleges that he " . . . often called [his] supervisor at Prosper Operators, Bucky Johnson, when [he] had a question as to production operations," and that he was advised "... by Prosper to direct [his] questions to Mr. Johnson as opposed to the lead operators present on the platform so that the lead operators I [sic.] would retain a good reputation as a qualified and competent production operator."[15] No supporting evidence was submitted to substantiate either of these statements.

---

[12] *Deposition of Timothy Magnon*, pg. 41.

[13] *Id.* at pgs. 24 and 74.

[14] *Plaintiff's Memorandum in Opposition to Motion for Summary Judgment* [Rec. Doc. 22], pg. 5; *Deposition of Timothy Magnon*, pg. 24, 29-32.

[15] *Affidavit of Timothy Magnon* [Rec. Doc. 22-5], pg. 1.

7

The United States Fifth Circuit Court of Appeal has stated, time and time again, that if a moving party has submitted competent evidence to support its motion, "... self-serving allegations are not the type of 'significant probative evidence' required to defeat summary judgment." *U.S. v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *See also DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005) (holding that a party's "... attempt to create a fact issue as to his knowledge by relying on a conclusory and self-serving affidavit is on unsteady ground.") *and BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (holding that defendant's reliance on his "conclusory, self-serving" affidavit was not sufficient to defeat summary judgment in favor of the plaintiff). Here, Forest Oil has presented the Court with the sworn testimony of the plaintiff and Davis to support its allegations of control. Plaintiff's bare and unsupported allegations will not, by themselves, be sufficient to overcome the weight of this evidence.[16]

Plaintiff also argues that, because he allegedly received all of his training as a "production operator" prior to or during his training with Prosper, Forest Oil cannot fulfill the control element of the *Ruiz* test. Assuming, *arguendo*, that this allegation is true, it would not prohibit a finding of control in this case. It is often the case that an employee comes into a job already trained. Following plaintiff's logic, however, any employer who

---

[16] Had plaintiff presented substantiating evidence of his claim, mere incidental and occasional contact with Prosper still would not have been sufficient to rebut Forest Oil's evidence of control. It is undisputed that plaintiff took his daily orders from Forest Oil employees and any contact he may have had with Prosper would only have been incidental to the primary purpose of his employment. *See Allen v. Texaco, Inc.*, 2001 WL 611391, *4 (E.D. La. 06/05/2001) (Vance, J.) and *Hudson v. Forest Oil Corp.*, 2003 WL 2004445, *3 (E.D. La. 04/28/2003) (Barbier, J.).

hires a skilled or trained employee would be incapable of fulfilling the control factor. This result is simply untenable, and the Court rejects plaintiff's argument.

Magnon further contends that Forest Oil was not controlling his actions at the specific time of the accident. In support of this, Magnon asserts that Davis, the Forest Oil supervisor, was cooking breakfast when the accident occurred.[17] While this allegation is disputed,[18] viewing the evidence in the light most favorable to plaintiff, "[t]his Court does not interpret the control factor to require that the borrowing employer direct each and every action taken by the borrowed employee." *Allen*, 2001 WL 611391, *4. A borrowing employer is not required to micro-manage a borrowed employee in every assigned task. It is enough in this case that Magnon took his orders from Forest Oil and was acting pursuant to those orders when he was injured.

Finally, plaintiff alleges that the Court should find a material issue of fact exists because this case is factually analogous to *Brown, supra*. Unlike in *Brown*, however, Magnon does not claim that he was unsupervised or supervised by another Prosper employee physically present on Grand Isle 76. Magnon also does not allege that he was assigned different working hours than the Forest Oil employees. Further, there was no conflicting testimony regarding who instructed plaintiff on how to complete his assigned work. To the contrary, plaintiff admits that he was supervised and took direction from

---

[17] *Deposition of Timothy Magnon*, pg. 52.

[18] *Deposition of Darryl Davis*, pg. 29.

Forest Oil employees, that he worked the same hours as the Forest Oil employees, and that he was bleeding the line as instructed by Wiliford.[19] Thus, in contrast to *Brown*, the undisputed facts of this case overwhelmingly support the defendant's contention that Magnon was acting under the control of Forest Oil.

Forest Oil's control over Magnon was not "... mere suggestion as to details," but was actual control of the type and method of work to be done. *Ruiz*, 413 F.2d at 313. Considering the undisputed evidence submitted by the parties, in the light most favorable to the plaintiff, the Court finds that the control factor weighs heavily in favor of borrowed employee status in this case.

### 2. Whose work was being performed

It is undisputed that Forest Oil's work was being performed.[20] Accordingly, this factor weighs in favor of borrowed employee status.

### 3. Agreement between the employers

There is no question that the contract between Forest Oil and Prosper provided that Prosper's employees were independent contractors.[21] However, this contract provision does not necessarily prohibit a finding of borrowed employee status. *Brown*, 984 F.2d at 677; *Melancon*, 834 F.2d at 1245. The Fifth Circuit has held that, in determining borrowed employee status, the parties' actions in carrying out a contract can provide an

---

[19] *Deposition of Timothy Magnon*, pgs. 37-38; 41-42; 47-48; 51-52.

[20] *Plaintiff's Memorandum in Opposition to Motion for Summary Judgment* [Rec. Doc. 22], pg. 9.

[21] *Forest Oil Master Service Contract* [Rec. Doc. 22-4].

implied modification or waiver of a contrary express provision. *Id.*

In *Billizon*, the only disputed issue before the Court was whether the existence of a contract provision " . . . purporting to prohibit borrowed-employee status [made] the district court's summary judgment inappropriate." 993 F.2d at 106. The Fifth Circuit held that even assuming factor three weighed in favor of the plaintiff's position, the remainder of the summary judgment record established that the plaintiff was Conoco's borrowed employee. *Id.* There, as here, the service contract governing the relationship between Conoco and the plaintiff's nominal employer, D & C, provided that the employees of D & C were not the employees of Conoco. However, the Court stated that "the reality of the work site and the [parties'] actions" in carrying out a contract established that the two employers had a contrary "'understanding or meeting of the minds.'" *Id.*

Despite the contrary provisions in the contract between Prosper and Forest Oil, the evidence before the Court indicates that Forest Oil controlled the work performed by Magnon. Magnon admitted that he regarded the Forest Oil employees as his "boss[es]."[22] Magnon also admitted that he took instructions from the Forest Oil employees and that it was a Forest Oil employee who directed him to bleed the line that allegedly caused his injuries.[23] The realities of the work site and the parties' actions, then, demonstrate that an unspoken agreement existed between Prosper and Forest Oil.

---

22 *Deposition of Timothy Magnon*, pgs. 24 and 74.

23 *Id.*, pgs. 37-38; 41-42; 47-48.

Assuming, *arguendo*, the Court were to find that the "agreement" factor did weigh in favor of plaintiff, that finding alone would be insufficient to deny summary judgment because, as in *Billizon*, "agreement" would be the only factor that could possibly support plaintiff's contention that he was not a borrowed employee. The Fifth Circuit has repeatedly stated that "no single factor is determinative." *Billizon*, 993 F.2d at 106; *Brown*, 984 F.2d at 676; *Melancon*, 834 F.2d at 1245. Therefore, even if this factor did weigh in favor of plaintiff, the Court would nonetheless be required to examine the remaining factors to make a final determination of Magnon's status as a borrowed employee.

### 4. Acquiescence

Plaintiff alleges that a material issue of fact exists concerning his acquiescence to his working conditions. However, plaintiff worked solely with Forest Oil for approximately four months before the time of the accident, and when the accident occurred, plaintiff was mid-way through his second hitch on the Grand Isle 76 platform.[24] Four months is a reasonable period of time to observe the living and working conditions to which plaintiff would be exposed. *See Lemaire v. Danos & Curole Marine Contractors, Inc.*, 265 F.3d 1059 (5th Cir. 2001) (*citing Brown*, 984 F.2d at 678 (holding that "one month is a sufficient amount of time for [the employee] to appreciate the new work condition")). The fact that plaintiff completed at least one hitch on the same

---

[24] *Id.*, pg. 50.

platform, and several more with the same company, prior to the accident weighs heavily in favor of acquiescence. As such, this factor also supports a finding of borrowed employee status.

### 5. Termination

A finding of borrowed employee status does not require that the lending employer completely sever its relation with the employee. *Melancon*, 834 F.2d at 1238; *Capps*, 784 F.2d at 617-8. The focus, instead, is on the lending employer's relationship with the employee while the borrowing occurs. *Capps*, 784 F.2d at 617-8. Here, Prosper hired plaintiff and assigned him to work for Forest Oil. When he was hired, plaintiff was given Prosper's "General Safety Policy & Procedures Manual" which contained a sectioned entitled "General Safety Rules."[25] Plaintiff was also required to sign a policy statement setting forth specific rules for employees.[26] Once on Forest Oil's platforms, however, plaintiff performed Forest Oil's work and was under the direct control and supervision of its employees. No Prosper employees were aboard the platform during any of Magnon's hitches, and there is no competent evidence to suggest that Prosper, in any way, actually maintained control of plaintiff.

Plaintiff argues, however, that because Prosper submitted an accident report naming Magnon as an employee,[27] the realities of the work site should be ignored and

---

[25] *Prosper Operators, Inc. "General Safety Policy & Procedures Manual,"* [Rec. Doc. 22-7]

[26] *Prosper Operators, Inc. Policy Statement*, [Rec. Doc. 22-8]

[27] *Employer's First Report of Injury of Occupational Illness* [Rec. Doc. 22-9].

13

Forest Oil should be precluded from claiming Magnon as a borrowed employee. At the time the accident occurred, Magnon was under the control and supervision of Forest Oil and was doing Forest Oil's work without the assistance of Prosper. Plaintiff also points to the accident report completed by Forest Oil wherein plaintiff is listed as a "Third Party" and Prosper is listed as Magnon's employer.[28] Both of the cited reports were prepared after the accident and after the borrowing had ceased. The "termination" factor does not require an employer to completely sever its relationship with the employee. The focus of this inquiry, instead, is the employer's relationship with the employee **while the borrowing occurs**. When the accident occurred, which is the operative time in determining borrowed employee status, Magnon was acting as a Forest Oil employee. The accident reports that plaintiff submits simply do not change this reality.

Finally, in a very conclusory manner, plaintiff states that "Prosper always maintained the right to take Mr. Magnon off the rig at their discretion[, and] Prosper always directed Mr. Magnon as to where he would be working and as to his work schedule."[29] Both of these assertions are based solely on the affidavit of Magnon, are unsupported by any other competent evidence and are not sufficient, in and of themselves, to overcome the summary judgment evidence submitted by the defendant. Viewing the evidence submitted by the parties in the light most favorable to plaintiff, this factor

---

[28] *Forest Oil Corp. Accident Report* [Rec. Doc. 22-10].

[29] *Plaintiff's Memorandum in Opposition to Motion for Summary Judgment* [Rec. Doc. 22], pg. 12.

14

weighs in favor of borrowed employee status.

### 6. Tools and Place of Performance

Magnon admits that there were no tools required to perform his assigned tasks.[30] However, while plaintiff may have brought his own crescent wrench aboard the vessel, any other tools that would have been required were made available to him by Forest Oil.[31] Forest Oil also provided Magnon with transportation to and from the platform and meals and lodging while aboard the platform.[32] Further, it simply cannot be disputed that Forest Oil provided the place of performance as it both owned and operated the platform where the injury occurred.

Plaintiff contends that because the only "tool" that was required was his training, and because some of his training came before he began his work with Forest Oil, Forest Oil did not provide the "tools" for him to complete his work. This argument is fallacious. As stated in the discussion of the control factor, *supra.*, if this argument were meritorious, it would prevent any employer who takes on a trained employee from claiming borrowed employee status. This Court refuses to endorse such a result.

### 7. Length of Employment

While plaintiff alleges that he only worked on the Grand Isle 76 platform for 10 days, the reality is that he worked in the same capacity on the same and other Forest Oil

---

[30] *Id* at 13; *citing Deposition of Darryl Davis*, pg. 78.

[31] *Affidavit of Timothy Magnon* [Rec. Doc. 22-5], pg. 2; *Deposition of Timothy Magnon*, pg. 25.

[32] *Deposition of Timothy Magnon*, pgs. 29 & 57.

rigs for several months.[33] Giving every inference to plaintiff as the non-moving party, the Court cannot say that this factor strongly weighs in favor of borrowed employee status. The fact that the Court does not find that this weighs in favor of borrowed employee status, however, does not mean that it weighs against the finding of such a status. *Capps*, 784 F.2d at 618. Instead, viewing the evidence in the light most favorable to the plaintiff, this factor is, at best, neutral.

### 8. Right to Discharge

It is undisputed that Forest Oil could not discharge Magnon from his employment with Prosper. Plaintiff admits, however, that Forest Oil had the right to discharge him from Forest Oil platforms and job sites.[34] The Fifth Circuit has found that "[t]his arrangement is sufficient to support a finding of borrowed employee status." *Brown*, 984 F. 2d at 679 (*citing Melancon*, 834 F.2d at 1246 *and Capps*, 784 F.2d at 618). As such, this factor weighs in favor of borrowed employee status.

### 9. Obligation to Pay

In its Motion for Summary Judgment, defendants cite to the deposition of Darryl Davis wherein Davis states that Magnon was only paid for hours worked for Forest.[35] Those hours had to be verified and approved by Forest.[36] While Prosper ultimately issued

---

[33] *Id* at pgs. 24 & 74.

[34] *Id* at pg. 48.

[35] *Deposition of Darryl Davis*, at pg. 77.

[36] *Id.*

16

Magnon's paycheck, Prosper would bill Forest Oil for Magnon's time.[37] This arrangement has be held to support a finding of borrowed employee status in other cases. *Melancon*, 834 F.2d at 1246; *Billizon*, 993 F.2d at 105-106; *Capps,* 784 F.2d at 618. This case is no different and the Court finds that this factor supports such a finding here.

## IV. CONCLUSION

After weighing the *Ruiz* factors in this case, the Court finds that Magnon was the borrowed employee of Forest Oil. As such and for the foregoing reasons, Forest Oil's Motion for Summary Judgment [Rec. Doc. 19] will be **GRANTED** and plaintiff's tort claims against Forest Oil will be **DISMISSED WITH PREJUDICE.**

---

[37] *Id.*